876 F.2d 896
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 James A.K. KAHAKUA; George Kitazaki; Donald Plummer,
Plaintiffs-Appellants,
v.
Elbert FRIDAY, Director, National Weather Service,
Defendants-Appellees.
 No. 88-1668.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 6, 1989.
Decided June 2, 1989.
 Before GOODWIN, HUG and TANG, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 In their age, race, and national origin discrimination suit, James Kahakua, George Kitazaki, and Donald Plummer appeal a grant of summary judgment in favor of their employer, the National Weather Service ("NWS"). We affirm.
 
 I.
 
 3
 The Honolulu Weather Service Forecast Office ("HWSFO") is one of over 50 forecast offices administered by the NWS. The HWSFO is responsible for weather warnings, pilot briefings, and forecast preparation for the State of Hawaii. In addition to professional meteorologists, the HWSFO employs paraprofessional meteorological technicians ("met techs").
 
 
 4
 Kahakua, employed as a GS-7 Communications Specialist at the HWSFO since February 1980, was born in Hawaii in 1936 and is of Hawaiian, Irish, Norwegian, German, and Japanese descent. Kitazaki, also employed as a GS-7 Communications Specialist, was born in Hawaii in 1938 and is of Japanese descent. Kahakua and Kitazaki purportedly speak Hawaiian Creole English. Plummer, employed as a GS-7 Weather Observation Specialist, was born in New Jersey in 1931 and is a Caucasian.
 
 II.
 
 5
 A. In 1985, the NWS issued a vacancy announcement for a Weather Service Specialist. The position was to be filled at either the GS-7, GS-8, or GS-9 level and the Position Descriptions stated that the incumbent "[m]ust have sufficient voice quality to provide easily understandable relay of weather information via voice recordings and telephone." A Merit Program Certificate issued by the Western Administrative Support Center (WASC) listed six "qualified" applicants: Kahakua, Kitazaki, Plummer, James Engle, James Nichols, and Douglas Faris.[1] Each of these candidates were HWSFO met techs who, fearing the loss of their jobs due to a proposed restructuring of the HWSFO, applied for the vacancy.
 
 
 6
 The final selection decision was to be made by Clarence Lee, the Meteorologist-in-Charge at the HWSFO. Lee asked each candidate to provide a tape of sample weather broadcasts and decided that Faris' tape was the best. Lee selected Faris, a 30-year old Caucasian, who was hired at the GS-7 level.[2] The district court found that Faris was hired because he had the best broadcast voice and that age and race were not factors in the selection. In making this determination, the court expressly considered Lee's credibility.
 
 
 7
 B. In 1986, a sixth WSS position was created. Prior to this time, four of the five current WSSs were Japanese-Americans.[3] Seven applicants, including Kahakua and Kitazaki, were found qualified by WASC. Lee was instructed by his supervisor to limit his selection to Kahakua, Kitazaki, and Engle. These three applicants again taped a sample weather report.
 
 
 8
 An expert, hired to review the tapes, ranked the three candidates as follows: (1) Engle; (2) Kitazaki; and (3) Kahakua. Lee also reviewed the tapes, similarly judged Engle to be the best, and selected Engle for the position.
 
 III.
 
 9
 After exhausting administrative remedies, Kahakua, Kitazaki, and Plummer brought an action in district court against the NWS, alleging that failure to select them for promotion was based on their age. Kahakua and Kitazaki also alleged discrimination based on race and national origin. After a bench trial, the district court entered judgment in favor of the NWS. Kahakua, Kitazaki and Plummer appeal.[4]
 
 IV.
 
 10
 We review questions of fact under the clearly erroneous standard and questions of law de novo. United States v. McConney, 728 F.2d 1195, 1200-01 (9th Cir.) (en banc), cert. denied, 469 U.S. 824 (1984). The district court's determinations of credibility are largely insulated from appellate review. Sutton v. Atlantic Richfield Co., 646 F.2d 407, 411 (9th Cir.1981). Furthermore, the district court's decision regarding the relevancy of evidence is reviewed for an abuse of discretion only. United States v. Burreson, 643 F.2d 1344, 1349 (9th Cir.), cert. denied, 454 U.S. 830, 847 (1981).
 
 V.
 
 11
 A. According to the Age Discrimination in Employment Act (ADEA), "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age ... shall be made free from any discrimination based on age." 29 U.S.C. Sec. 633(a). In an ADEA "disparate treatment" case, such as that filed by the appellants in the instant case, the same legal standard is used as with Title VII disparate treatment claims. Williams v. Edward Apffels Coffee Co., 792 F.2d 1482, 1484 (9th Cir.1986). Specifically, the legal standard is as follows:
 
 
 12
 [A] plaintiff must first establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.
 
 
 13
 Lowe v. City of Monrovia, 775 F.2d 998, 1005 (9th Cir.1986).
 
 
 14
 The plaintiffs in a disparate treatment case must offer evidence that "give[s] rise to an inference of unlawful discrimination." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). One way to establish this inference is to show that the following four requirements are met: (1) that the plaintiffs belong to the protected class; (2) that the plaintiffs applied and were qualified for a job for which the employer was seeking applicants; (3) that, despite being qualified, the plaintiffs were rejected; and (4) that, after the plaintiffs' rejection, the position remained open and the employer continued to seek applications from persons of comparable qualifications, or that a person outside the protected class was selected for the position. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); see also Lynn v. Regents of the University of California, 656 F.2d 1337, 1341 (9th Cir.1981), cert. denied, 459 U.S. 823 (1982).
 
 
 15
 B. The district court ruled that in not meeting the fourth McDonnell Douglas element, the appellants failed to establish a prima facie case. According to the district court, the appellants failed to prove that a person outside the protected class was selected for promotion. Although Kahakua was seeking promotion to the GS-8 grade and Kitazaki and Plummer were seeking promotion to the GS-9 grade, Faris was selected as a GS-7, a grade not sought by any of the appellants. It seems that the district court used a too restrictive view of the requirements for a prima facie case. Even though Faris was hired at a lower grade, he was nonetheless selected for the same job sought by the appellants.
 
 
 16
 But even if the district court erred in ruling that the appellants did not establish a prima facie case, this error is of no consequence because after hearing all the evidence at trial, the district court ruled that the NWS had a legitimate, non-discriminatory reason for the selection that was not pretextual. In other words, the district court's finding that there was no age discrimination was not merely based on the appellants' failure to establish a prima facie case. After listening to all the testimony and weighing all the evidence at trial, the district court concluded that Lee's articulated reasons (best broadcast voice) for hiring Faris were not pretextual. This conclusion of the district court is not clearly erroneous.
 
 
 17
 C. Finally, pointing to certain statistical material offered by the NWS in the form of exhibits, the appellants argue that the district court relied on inadmissible evidence. We find that the exhibits in question, while perhaps not determinative, are "relevant" within the meaning of Fed.R.Evid. 401, and accordingly, we hold that the district court did not abuse its discretion in admitting this material.
 
 VI.
 
 18
 A. Kahakua and Kitazaki claim that they were not selected "not only because of their age but also because of their Hawaiian Creole English accents, a factor integrally related to their race and national origin." Appellant's Opening Brief at 43-44. Title VII of the Civil Rights Act of 1964 prohibits discrimination on the basis of race, color, religion, sex or national origin in federal employment. 42 U.S.C. Sec. 2000e-16(a). The Equal Employment Opportunity Commission defines "national origin discrimination"
 
 
 19
 broadly as including, ... the denial of equal employment opportunity benefits because of an individual's ... cultural or linguistic characteristics of a national origin group.
 
 
 20
 29 C.F.R. Sec. 1606.1. As noted above, the legal standard articulated in Lowe, 775 F.2d at 1005, is applicable here.
 
 
 21
 After hearing conflicting testimony, the district court ruled that the speech patterns exhibited by Kahakua and Kitazaki are not based upon race or national origin. It concluded that the variety of English spoken by Kitazaki and Kahakua was acquired as a result of their economic status, environment, and education, and not as a result of race or national origin.
 
 
 22
 We need not decide the specific question of whether Hawaiian Creole accent is a function of its speaker's race or national origin within the meaning of Title VII and 29 C.F.R. Sec. 1606.1. But even assuming, arguendo, that discrimination on the basis of Hawaiian Creole accent is actionable, the district court ruled that the reason the appellants were not selected was because of their comparatively lower verbal skills, not because of their accents. We agree that the NWS successfully rebutted the appellants' prima facie case with a legitimate, nonpretextual explanation.[5]
 
 
 23
 B. We have set forth the legal standard for disparate impact cases as follows:
 
 
 24
 an employee must show that a facially neutral employment practice has a "significantly discriminatory" impact upon a group protected by Title VII. Discriminatory intent need not be proven. Once an employee has demonstrated that an employment practice has a disparate impact upon protected persons, the employer must demonstrate that the particular employment practice has "a manifest relationship to the employment in question," or that the employment practice is justified by "business necessity." The employer may also rebut the employee's prima facie case by showing the inaccuracy of the employee's statistics. If the employer demonstrates a business justification the employee may still prevail by demonstrating that the employment practice is a "mere pretext for discrimination," or that the employer's purpose could be served by selection devices with less discriminatory impact.
 
 
 25
 Moore v. Hughes Helicopters, 708 F.2d 475, 481 (9th Cir.1983) (citations omitted). Furthermore,
 
 
 26
 disparate impact analysis may be applied to challenge subjective employment practices or criteria provided the plaintiffs have proved a causal connection between those practices and the demonstrated impact on members of a protected class.
 
 
 27
 Atonio v. Wards Cove Packing Co., 810 F.2d 1477, 1482 (9th Cir.1987) (en banc), cert. granted, 108 S.Ct. 2896 (1988).
 
 
 28
 The district court ruled that the appellants failed to show that the selection process had a "significantly discriminatory impact upon Americans of Japanese, Hawaiian or Polynesians ancestry," and that even if discriminatory impact were proven, the appellants failed to demonstrate that "the use of voice quality as a criteria" caused the impact. ER 70. In addition, the court ruled that the NWS "successfully rebutted the prima facie case by showing no disparity exists since two of the last four vacancies for WSS positions were filled by Americans of Japanese ancestry." Id.
 
 
 29
 The appellants claim disparate impact from the facts that (a) of the two non-Caucasian applicants for the 1985 position, the job security of 100% of them (i.e., 2) was still at risk in November 1986; and (b) of the four Caucasian applicants for the 1985 position, the job security of 0% of them was still at risk in November 1986 since three were hired for secure positions and one retired.[6]
 
 
 30
 The appellants fail to pass the first hurdle of making out a prima facie case of discriminatory impact because they are basing their entire case on a sample of only six, statistically, a very small sample. See Morita v. Southern California Permanente Medical Group, 541 F.2d 217, 220 (9th Cir.1976) ("our holding is premised on the obvious fact that plaintiff's use of only eight persons in his statistical analysis is much too small to have any significant benefit to his position. Hence, 'statistical evidence derived from an extremely small universe, as in the present case, has little predictive value and must be disregarded.' ") (citations omitted), cert. denied, 429 U.S. 1050 (1977). The appellants have not made out an prima facie case of disparate impact.
 
 VII.
 
 31
 In summary, regarding their age discrimination claim, even if the appellants did make out a prima facie case, the NWS successfully rebutted it with a legitimate, non-pretextual explanation. Similarly, regarding the claim by Kahakua and Kitazaki that they were victims of discrimination based on their Hawaiian Creole accent, the prima facie case was successfully rebutted with a legitimate, non-pretextual explanation. Finally, because of their statistically inadequate sample, the appellants failed to make out a prima facie case of disparate impact.
 
 The judgment of the district court is
 
 32
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Of these six applicants, only Kahakua and Kitazaki were non-Caucasians. Each of the applicants, except Faris, was over 40 years old
 
 
 [2]
 Prior to being selected for this position, Faris was a Forecaster Aide at the GS-6 level. Each of the other five applicants were either Communication Specialists or Weather Observations Specialists. It is the practice of the WASC Personnel Office to advertise jobs at the widest possible range of grades and to fill them at the lowest possible grade
 
 
 [3]
 The fifth WSS was Faris who was hired in 1985
 
 
 [4]
 Whereas the age discrimination claim involved all three appellants with respect to the 1985 vacancy, the race and national origin claim involves both the 1985 and 1986 vacancies, but only for Kahakua and Kitazaki
 
 
 [5]
 In this sense, the instant case is similar to Fragante v. City and County of Honolulu, slip op. No. 87-2921 in which we noted that:
 [t]he record conclusively shows that Fragante was not selected because of the deleterious effect his Filipino accent had upon his ability to communicate orally, not merely because he had such an accent.
 Slip op. No. 87-2921 at 1717 (9th Cir. March 6, 1989) (emphasis in original).
 
 
 [6]
 In other words, the appellants' disparate impact claim is based upon the comparison between 100% and 0%